[Cite as *Young v. Ohio State Univ. Hosps.*, 2017-Ohio-2673.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Robert Young, | : | |
| Plaintiff-Appellant, | : | No. 16AP-527 |
| | | (C.P.C. No. 14CV-10934) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| The Ohio State University Hospitals, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on May 4, 2017

**On brief:** *Moore & Yaklevich*, and *W. Jeffrey Moore*, for appellant. **Argued:** *W. Jeffrey Moore.*

**On brief:** *Michael DeWine*, Attorney General*, Matthew J. Karam*, and *Tracy M. Nave*, for appellee. **Argued:** *Matthew J. Karam.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, Robert Young, appeals from a judgment of the Franklin County Court of Common Pleas granting the motion for summary judgment of defendant-appellee, The Ohio State University Hospitals ("OSU Hospitals"), and dismissing all of Young's claims against OSU Hospitals. For the following reasons, we affirm.

## I. Factual and Procedural Background

{¶ 2} In 1989, Young was hired as a corrections officer with the State of Ohio, Department of Rehabilitation and Correction ("DRC"), and he continues to be employed in that capacity. Young is a member of the Ohio Civil Service Employees Association union ("OCSEA"), and his employment with DRC is subject to a collective bargaining agreement ("CBA") between the DRC and the OCSEA. DRC contracts with OSU Hospitals

for the medical treatment of DRC's inmates. As part of that medical services agreement, DRC assigns corrections officers to work at OSU Hospitals to provide security in connection with the treatment of those inmates.

{¶ 3} Since approximately 1990, DRC had assigned Young to work at OSU Hospitals. However, in September 2008, an incident occurred involving Young and staff at OSU Hospitals. The exact nature and fault relating to the incident are disputed. On November 13, 2008, OSU Hospitals formally requested that DRC no longer assign Young to its facilities. The next week, DRC informed OSU Hospitals that the request would be followed.

{¶ 4} Young filed a grievance through his union, OCSEA, based on his contention that DRC violated its agreement with the union to enable DRC employees to bid on workplace assignments based on seniority. According to Young, he was improperly denied his request to be assigned to OSU Hospitals. In December 2009, an arbitrator issued a decision upholding Young's grievance. The arbitrator ruled that DRC had violated its agreement with OCSEA regarding the assignment of employees, and the arbitrator directed DRC to assign Young to OSU Hospitals within one month of his decision.

{¶ 5} Despite DRC's requests for OSU Hospitals to accept the arbitrator's decision, OSU Hospitals has refused repeatedly to permit Young back on its property to work. In January 2010, DRC informed OSU Hospitals of the arbitrator's ruling and indicated that it was planning to assign Young back to work at OSU Hospitals. OSU Hospitals acknowledged the arbitrator's decision but informed DRC of its unchanged decision not to permit Young to work at its facilities. A few days later, Young's DRC supervisor directed Young to go to an OSU Hospitals facility for work. When Young arrived at the OSU Hospitals facility, he was confronted by OSU Hospitals' security personnel who instructed him to leave the premises. In February 2012, DRC informed OSU Hospitals that Young again had requested to be assigned to its facilities, and DRC granted that request pursuant to the CBA. A few days later, OSU Hospitals informed DRC that its position regarding Young's assignment to its facilities had not changed, and Young would not be permitted to work on the medical center campus. Despite being notified of OSU Hospitals' position, Young apparently attempted to work on the medical center

campus in July and August 2012, and both times he was escorted from the campus. In September 2012, OSU Hospitals warned Young that if he again entered the medical center campus in an attempt to work, he would be criminally trespassing.

{¶ 6} In November 2013, Young filed suit against OSU Hospitals in the Court of Claims of Ohio. In February 2014, he filed an amended complaint against OSU Hospitals in that court, asserting claims of libel, slander, tortious interference with a business relationship, and intentional infliction of emotional distress. OSU Hospitals filed a motion to dismiss pursuant to Civ.R. 12(B)(1) and (6). In July 2014, the Court of Claims granted, in part, OSU Hospitals' motion to dismiss. The Court of Claims dismissed without prejudice Young's tortious interference claim for lack of subject-matter jurisdiction. As to Young's claims for libel, slander, and intentional infliction of emotional distress, the Court of Claims denied the motion to dismiss, and set the case for trial in the normal course. Young later voluntarily dismissed those remaining claims, and he did not appeal the Court of Claims' dismissal of his tortious interference claim.

{¶ 7} In October 2014, Young filed a complaint in the Franklin County Court of Common Pleas, asserting claims for libel, slander, intentional infliction of emotional distress, and tortious interference with a business relationship. In December 2014, OSU Hospitals moved to dismiss the matter pursuant to Civ.R. 12(B)(1). The trial court denied OSU Hospitals' motion to dismiss for lack of subject-matter jurisdiction based on its finding that it had jurisdiction over the tortious interference claim pursuant to R.C. Chapter 4117. In resolving the motion to dismiss, the trial court did not analyze Young's other claims. The matter proceeded with discovery, and, in February 2016, OSU Hospitals moved for summary judgment pursuant to Civ.R. 56(C). In support of its summary judgment motion, OSU Hospitals again argued the court lacked subject-matter jurisdiction, and it also argued Young's tortious interference claim failed as a matter of law because it was barred by the statute of limitations and because Young cannot meet the required elements for that claim.

{¶ 8} In June 2016, the trial court granted OSU Hospitals' motion for summary judgment. The trial court, again only analyzing Young's tortious interference claim, reconsidered the issue of its subject-matter jurisdiction and found that it lacked jurisdiction over that claim. The trial court also found that Young's tortious interference

claim is time-barred based on the applicable statute of limitations.  Further, the trial court determined that Young's tortious interference claim fails as a matter of law because OSU Hospitals was privileged to prohibit Young, as a DRC employee, from entering its premises.  The trial court dismissed all of Young's claims against OSU Hospitals.

{¶ 9}   Young timely appeals.

## II.  Assignment of Error

{¶ 10}  Young assigns the following error for our review:

> The trial court committed error by granting defendant-appellee's motion for summary judgment.

## III.  Discussion

{¶ 11} Young's sole assignment of error asserts the trial court erred in granting OSU Hospitals' motion for summary judgment.  In support, Young argues the trial court erred in finding that it lacked subject-matter jurisdiction over his tortious interference claim, that his tortious interference claim is barred by the applicable statute of limitations, and that he cannot, as a matter of law, prove the elements of tortious interference.[1] Because the trial court properly dismissed Young's tortious interference claim for lack of subject-matter jurisdiction, his assignment of error lacks merit.

{¶ 12} The threshold issue before the trial court was whether it had subject-matter jurisdiction over Young's claims.  *See Turner v. Ohio Dept. of Rehab. & Corr.*, 180 Ohio App.3d 86, 2008-Ohio-6608, ¶ 9 (10th Dist.) ("Whether there is subject matter jurisdiction is a threshold question that will prevent a court from reaching the underlying issues in a case.").  In deciding a Civ.R. 12(B)(1) motion, the court must dismiss for lack of subject-matter jurisdiction if the complaint fails to allege any cause of action cognizable in the forum.  *Brown v. Levin*, 10th Dist. No. 11AP-349, 2012-Ohio-5768, ¶ 14; *see* Civ.R. 12(H)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction on the subject matter, the court shall dismiss the action.").

{¶ 13} Pursuant to the Court of Claims Act, R.C. 2743.01 et seq., the state has waived its immunity from liability and subjected itself to being sued in accordance with the same rules of law applicable to suits between private parties.  R.C. 2743.02(A)(1).  The

---

[1] Young does not challenge the trial court's dismissal of his other claims for libel, slander, and intentional infliction of emotional distress.  Thus, the dismissal of those claims is not at issue in this appeal.

court of claims has exclusive, original jurisdiction over civil actions against the state for money damages that sound in law. R.C. 2743.03(A)(1); *Cardi v. State*, 10th Dist. No. 12AP-15, 2012-Ohio-6157, ¶ 7. However, "[w]hile R.C. 2743.02(A)(1) vests exclusive subject-matter jurisdiction over suits previously barred by sovereign immunity, R.C. 4117.09(B)(1) expressly allows for suits alleging violations of collective bargaining agreements to be brought in common pleas courts." *Moore v. Youngstown State Univ.*, 63 Ohio App.3d 238, 242 (10th Dist.1989).

{¶ 14} The enactment of R.C. Chapter 4117 established a framework for resolution of labor disputes in the public sector by creating new rights and by setting forth specific procedures and remedies for asserting those rights. *Crable v. Ohio Dept. of Youth Servs.*, 10th Dist. No. 09AP-191, 2010-Ohio-788, ¶ 9, citing *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9*, 59 Ohio St.3d 167 (1991); *see Dayton v. Fraternal Order of Police, Captain John C. Post Lodge No. 44*, 2d Dist. No. 18158 (June 2, 2000) ("R.C. Chapter 4117 sets forth the rights and obligations of public employers, public employees, and public employee organizations insofar as they engage in collective bargaining."); *see also State ex rel. Fraternal Order of Police, Ohio Labor Council, Inc. v. Franklin Cty. Court of Common Pleas*, 76 Ohio St.3d 287, 289 (1996) ("[I]f a party asserts claims that arise from or are dependent on the collective bargaining rights created by R.C. Chapter 4117, the remedies provided in that chapter are exclusive.").

{¶ 15} Pursuant to R.C. 4117.09(B)(1), collective bargaining agreements subject to R.C. Chapter 4117 must provide for "a grievance procedure which may culminate with final and binding arbitration of unresolved grievances." This section further provides that "[a] *party* to the agreement may bring suits for violation of agreements or the enforcement of an award by an arbitrator in the court of common pleas of any county wherein a party resides or transacts business." (Emphasis added.) Thus, R.C. 4117.09(B)(1) "requires that any collective bargaining agreement contain a two step procedure - - a grievance procedure with arbitration first, and ultimately the right [of a party] to file in common pleas court." (Citation omitted.) *State ex rel. Wilkinson v. Reed*, 99 Ohio St.3d 106, 2003-Ohio-2506, ¶ 19; *Crable* at ¶ 11, citing *State ex rel. Wilkinson*.

{¶ 16} Young claims the common pleas court had jurisdiction over his claim for tortious interference pursuant to R.C. Chapter 4117. However, Young, a public employee

union member, was not a "party" to the CBA between his union and the state. *See Brondes v. Internatl. Unions of Police Assn., AFL-CIO Local 71*, 3d Dist. No. 5-02-33, 2002-Ohio-5800, ¶ 12 ("Union members are not 'parties' to a collective bargaining agreement."); *Daughriety v. State of Ohio, Mount Vernon Dev. Ctr.*, 5th Dist. No. 94 CA 03 (Sept. 19, 1994) (noting the court's previous holdings that "the union and the employer are the proper parties in an action concerning public sector labor, and that an individual employee cannot bring a private lawsuit [under R.C. Chapter 4117]").[2]  Thus, R.C. 4117.09(B)(1) does not provide Young the right to file suit in the court of common pleas because such a claim is not cognizable in the court of common pleas. *See Brondes* at ¶ 12 (R.C. 4117.09 does not authorize "an original action by an individual employee in common pleas court.").  Moreover, Young is not suing OSU Hospitals for "violation of agreements or the enforcement of an award by an arbitrator"—he is suing for tortious interference. By its plain terms, R.C. 4117.09(B)(1) does not apply to his tortious interference claim. *See Franklin Cty. Sheriff's Dept. v. Fraternal Order of Police, Capital City Lodge No. 9*, 64 Ohio App.3d 684, 689 (10th Dist.1991) ("It is clear [based on the language of R.C. 4117.09(B)(1)] that the intent of the General Assembly in establishing this limited jurisdiction within the common pleas court is limited to those instances where it is claimed that there has been a violation of a collective bargaining agreement or for the enforcement of an arbitrator's award.").  Therefore, we find the trial court properly determined that it lacked subject-matter jurisdiction.

{¶ 17} Accordingly, insofar as Young's assignment of error challenges the trial court's ruling that it lacked subject-matter jurisdiction, it is without merit.  Further, to the extent the assignment of error challenges the trial court's ruling on the merits of Young's tortious interference claim, that challenge is moot because the trial court lacked subject-matter jurisdiction to enter a judgment on the merits. *See Kinney v. Ohio Dept. of Adm. Servs.*, 30 Ohio App.3d 123 (10th Dist.1986), syllabus ("A court is without power to grant summary judgment on the merits of a claim where the court lacks subject matter

---

[2] An employee may be considered a party if the collective bargaining agreement conferred standing on the employee to petition a common pleas court with respect to an arbitrator's award. *See Leon v. Boardman Twp.*, 100 Ohio St.3d 335, 2003-Ohio-6466, syllabus.  However, Young does not assert that the CBA confers such standing so as to render him a party to the CBA for the purpose of R.C. 4117.09, and he has not brought suit to enforce the arbitrator's decision.

jurisdiction over the claim.").  Because Young's sole assignment of error fails to present a reversible error, it is overruled.

## IV.  Disposition

{¶ 18}  Having overruled Young's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK, P.J., and BROWN, J., concur.

TYACK, P.J., concurring.

{¶ 19}  This case presents, once again, an ethical problem which the office of the Ohio Attorney General needs to resolve.  At one point in this litigation, attorneys in the office argued to a common pleas court that the common pleas court had no jurisdiction over the issues.  At a different point in time, attorneys in the office argued in the Court of Claims of Ohio that the Court of Claims had no jurisdiction and only a common pleas court had jurisdiction.  It is not ethical for members of the same law firm to argue two such conflicting theories about jurisdiction and to switch the theory to whatever benefits the office in a particular court.  The assertion that one part of the office does not communicate with another part of the office is no excuse.

{¶ 20}  As to the merits of this case, the majority decision is correct, so I join in that decision.

_____